# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| **DIRECTV, INC.,** | |
| **Plaintiff,** | Consolidated |
| | Civil Action No.  AW-03-1631 |
| v. | |
| **LANKESTER,** *et. al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

Currently pending before the Court are Plaintiff DIRECTV Inc.'s ("DIRECTV") numerous Motions for Entry of Judgment by Default alleging violations of the Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et. seq.* ("Cable Communications Act"), the Electronic Communications Policy Act of 1986, 18 U.S.C. § 2510 *et. seq.* ("Wiretap Act"), and common law.  The claims in this case arise from Defendants' alleged use of one or more pirate devices to receive DIRECTV's satellite television service. The motions are ripe for consideration, and no hearing is deemed necessary.  See Local Rule 105.6 (D. Md. 2004).  For the reasons set forth below, DIRECTV's motions are granted in part and a default judgment will enter in favor of DIRECTV against each Defendant.

### FACTUAL AND PROCEDURAL BACKGROUND

DIRECTV provides satellite television programming to homes and businesses throughout the United States on a subscription and pay-per-view basis.  In order to prevent illicit interception of its satellite transmissions, DIRECTV uses encryption technology to scramble the signal.  Each DIRECTV customer is required to purchase system hardware and an access card—which together function as

de-scramblers—in order to view the programming for which they have paid and only that programming. Despite these measures of protection, satellite television pirates have found ways to modify their access cards so as to view DIRECTV programming without paying for it. To counter this, DIRECTV has developed electronic countermeasures (ECMs), which are streams of data, sent along with the satellite signal, to target and disable modified access cards. In turn, however, the pirates have responded with a variety of pirate-access devices that restore their modified access cards' ability to gain unauthorized access to DIRECTV's programming. As a result, DIRECTV is deprived of its subscription fees.

DIRECTV filed a complaint alleging that Defendants purchased one or more pirate-access devices to intercept and decrypt DIRECTV's protected satellite communications without authorization or payment, in violation of 47 U.S.C. § 605 and 18 U.S.C. § 2511. Defendants were served. Because of Defendants' failure to plead or otherwise defend this action in any way, the Clerk, pursuant to Federal Rule of Civil Procedure 55(a), entered default against each of them. This failure authorizes the Court to enter a default judgment. *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992). DIRECTV now moves for such judgment, seeking damages, attorneys' fees, costs and injunctive relief. As previously mentioned, Defendants did not respond to DIRECTV's motions.

In *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001), the Fourth Circuit held that in a case such as this, "'[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact,'" but that "'[t]he defendant is not held . . . to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Id*. at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Accordingly, the Court must examine

Defendants' liability under the various causes of action alleged in DIRECTV's complaint. *See* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed.1998) (noting that "even after default, . . . it remains for the court [to determine] whether the unchallenged facts constitute a legitimate cause of action, since a party does not admit mere conclusions of law.").

## DISCUSSION

### A. Liability

DIRECTV has not been consistent in identifying the provisions of the relevant statutes it claims were violated. DIRECTV's complaint alleged violations of 47 U.S.C. § 605(a) and (e)(4) and 18 U.S.C. §§ 2511 and 2512, and its prayer for relief requests damages in accordance with those statutory violations. DIRECTV's motions for default judgment, however, seek damages only for violations of § 605(e)(4) and § 2511. Notwithstanding the omission of § 605(a) from the current motions, the Court will hold DIRECTV to its invocation of that provision in the complaint.[1]

---

[1] This action is one of DIRECTV's numerous lawsuits targeting purchasers of pirating devices all across the country. The recent decisions reached by some district courts may explain why DIRECTV's pleadings and memoranda are inconsistent. For instance, DIRECTV's complaint alleged a violation of 18 U.S.C. § 2512(1)(b), but DIRECTV does not reiterate this allegation in its motions for default judgment. District courts across the nation have repeatedly considered the question whether § 2520(a) provides a private right of action under § 2512(1)(b), with a number of courts concluding that it does not. *Compare DIRECTV, Inc. v. Treworgy*, 373 F.3d 1124 (11th Cir. 2004) (no private right of action); *DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d. 1259 (D. Kan. 2003) (same); *DIRECTV, Inc. v. Lewis*, 2004 WL 941805 (W.D.N.Y. Jan. 6, 2004) (same); *DIRECTTV, Inc. v. Westendorf*, 2003 WL 22139786 (N.D. Ill. Sep. 16, 2003) (same), *with DIRECTV, Inc. v. Perez*, 279 F. Supp. 2d 962 (N.D. Ill. 2003) (private right of action available); *DIRECTV, Inc. v. Calamanco*, 2003 WL 21956187 (N.D. Iowa Jan. 21, 2003) (same). Significantly, many of those recent decisions have cited the Fourth Circuit in support of the proposition that § 2520(a) does not provide a private cause of action for violations of § 2512(1)(b). *See, e.g.*, *DIRECTV, Inc., v. Boggess*, 300 F. Supp. 2d 444 (S.D. W. Va. 2004) (determining that the Fourth Circuit's conclusion that § 2520 does not provide a private right of action for violations of § 2512 has not been superseded by amendments to § 2520) (citing *Flowers v. Tandy Corp.,* 773 F.2d 585 (4th Cir. 1985)); *DIRECTV, Inc. v. Adrian*, 2004 WL 1660665 (N.D. Ill. Jul 22, 2004) (finding no private right of action for possession under § 2512(1)(b)); *but see DIRECTV, Inc. v. Dillon*, 2004 WL 906104 (N.D. Ill. Apr 27, 2004) (calling into question the continued viability of the holding in *Flowers*). Because this Court has already found that 18 U.S.C. § 2512 fails to state a claim, see March 1, 2004 Order, the Court will not address the question of whether a private right of action is available for violations of 18 U.S.C. § 2512(1)(b).

The Court likewise recognizes that under § 605(a) the potential minimum statutory damage award is considerably less than the minimum award provided in §§ 605(e)(4) and 2511(1)(a). Once the Court elects to award damages under these latter two

Section 605(e)(3) of the Cable Communications Act provides a civil remedy for any person aggrieved by violations of § 605(a) or (e)(4).[2] Count One of DIRECTV's complaint alleges a violation of § 605(a). This section of the Communications Act states that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). DIRECTV alleges that Defendants purchased pirate-access devices using interstate or foreign wire facilities and received them via the Postal Service or commercial mail carriers.[3] DIRECTV further alleges that Defendants "illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception, and exhibition of Satellite Programming transmitted by DIRECTV," and that each Defendant "used such communications for his own benefit or for the benefit of others who were not entitled to such communications." Drawing all reasonable inferences in DIRECTV's favor, this Court concludes from Defendants' possession of pirate-access devices that they received DIRECTV's signal without authorization. *See e.g.*, *DIRECTV, Inc. v. Cardona*, 275 F. Supp.

---

provisions, its discretion is strictly limited regarding the amount of damages; that is, if the Court determines that damages are appropriate, it cannot award less than $10,000 under § 605(e)(4) and § 2511(1)(a) no matter how minor the transgression. Depending upon the extent of the violation, a damages award could reach a level highly disproportionate to the harm actually suffered. Accordingly, and because the default judgment must be based upon the complaint, the Court will not permit DIRECTV to reap a windfall simply by requesting relief only on those provisions that are financially more advantageous.

[2] Under 47 U.S.C. § 605(e)(3)(C)(i), damages are to be computed, "at the election of the aggrieved party," in accordance with either of the following:

(I) . . . actual damages suffered by him as a result of the violation and any profits of the violator . . . ; or
(II) . . . statutory damages for each violation of subsection (a) . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of subsection [(e)](4) . . . statutory damages in a sum of not less than $10,000, or more than $100,000, as the court considers just.

[3] DIRECTV executed several writs of seizure upon the business shipping facilities of major sources of pirate technologies. During and subsequent to these raids, DIRECTV came into possession of evidence, including orders and invoices, showing that Defendants illegally purchased and/or received the pirate-access devices.

2d 1357, 1362 (M.D. Fla. 2003) ("[P]ossession of equipment used to intercept satellite transmissions . . . is evidence that satellite transmissions were in fact intercepted."). Accordingly, the Court finds that Defendants intercepted DIRECTV's satellite communications in violation of § 605(a).

DIRECTV also contends that Defendants violated § 605(e)(4). That provision refers to "[a]ny person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services." 47 U.S.C. § 605(e)(4). DIRECTV avers that Defendants "knowingly, [sic] manufactured, assembled, or modified an electronic, mechanical or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily to facilitate the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or is intended for any other prohibited activity," and that Defendants "actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV Satellite Programming." Further, DIRECTV says that "by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers, Defendants engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming."

As discussed above, Defendants' defaults should not be treated as an absolute confession of liability and of DIRECTV's right to recover. *See Ryan*, 253 F.3d at 780. Rather, the Court must assess whether the well-pleaded facts, which Defendants admitted by operation of their defaults, support the relief

5

sought. *Id*. Here, the relevant fact is that each Defendant purchased between one and six pirate-access devices. Other courts have found, and this Court agrees, that § 605(e)(4) "targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices, such as Defendant." *DIRECTV, Inc. v. Getchel*, 2004 WL 1202717, at *3 (D. Conn. May 26, 2004) (citing *DIRECTV, Inc. v. Albright*, 2003 WL 22956416, at *2 (E.D. Pa. Dec. 9, 2003)). Defendants' simple purchase of pirate-access devices does not establish liability under § 605(e)(4), nor does the act of installing and activating the pirate-access devices convert Defendants into manufacturers or distributors as contemplated by that Section. *See Albright*, 2003 WL 22956416, at *2. Accordingly, Defendants are not liable for a violation of § 605(e)(4).

Count Two of the complaint invokes the Wiretap Act, 18 U.S.C. § 2511. Section 2511(1)(a) is a criminal statute providing that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be fined and/or imprisoned. Section 2520(a) provides a private right of action for a violation of § 2511, stating that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." *See DIRECTV, Inc. v. Nicholas*, 2005 WL 844945 (4th Cir. 2005) (holding that the plain language of §§ 2511 and 2520 allows for a civil action against a defendant for interception of encrypted transmissions). DIRECTV alleges that Defendants "intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV." The Court finds that Defendants, by default, admit that they

intercepted DIRECTV's electronic communication in violation of § 2511 and are thus liable under that section.

### B.     Damages

Having found that Defendants are liable to DIRECTV for violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(a), the Court must determine the damages to be awarded.  Where, as here, the Defendants do not contest the damages requested and they are readily ascertainable, no hearing is necessary.  The Court can rely upon the statutes, affidavits, and other supporting documentation in assessing damages and reasonable attorneys' fees.  *See* Fed. R. Civ. P. 55(b)(2); *Pope v. United States*, 323 U.S. 1 (1944) (upon default, the court can compute damages from facts of record); *see also HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908 (1st Cir. 1988); *United States v. DeFrantz,* 708 F.2d 310 (7th Cir. 1983); *Southern Gen. Ins. Co. v. O'Keefe*, 275 F. Supp. 107 (D. Md. 1967).  DIRECTV has moved for damages "in the amount of $10,000 in accordance with 47 U.S.C. § 605(e)(3) and 18 U.S.C. § 2520(c)(2)," or, in the alternative, for actual damages computed at $229.08 per month from date of purchase to commencement of the instant action.

Violations of § 605(a) of the Communications Act are calculated in accordance with § 605(e)(3)(C)(i), which states in relevant part that damages are to be computed, "at the election of the aggrieved party," in accordance with either of the following:

> (I) . . . actual damages suffered by him as a result of the violation and any profits of the violator . . . ; or
>
> (II) . . . statutory damages for each violation of subsection (a) . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

7

47 U.S.C. § 605(e)(3)(C)(i).  Courts have considered a number of factors in determining a just imposition of statutory damages:

> (1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct; and (5) whether the damage award is comparable to awards in similar cases.

*DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1131 (M.D. Ala. 2004) (citations omitted); *cf*. *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 286 (D. Conn. 2001) (holding that the specific amount of statutory damages assessed pursuant to § 605(e)(3)(C)(i)(II) rests within the sound discretion of the Court).

Violations of § 2511 of the Wiretap Act are calculated in accordance with § 2520(c)(2), which states in relevant part that "the court *may* assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2) (emphasis added).  In the Fourth Circuit, the decision to award any damages at all under § 2520(c)(2) is discretionary.  *Nalley v. Nalley*, 53 F.3d 649, 651 (4th Cir. 1995) (finding that § 2520(c)(2) embodies a congressional intent to grant courts the discretion to decline to award damages). As stated by the *Nalley* Court, a close reading of 18 U.S.C. § 2511 "reveals that it does not mandate that every violator of the Act be punished."  *Id*. at 652; *see also Reynolds v. Spears*, 93 F.3d 428, 434-35 (8th Cir. 1996) (Court adopts the rationale of *Nalley*, saying "We think it logical that Congress chose to make the award of such damages discretionary, given the potential of the law to bring financial ruin to persons of modest means, even in cases of trivial transgressions.").  Other courts have come to the same conclusion.  *See e.g.*, *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004); *DIRECTV, Inc.*

*v. Perrier*, 2004 WL 941641, at *4 (W.D.N.Y. Mar. 15, 2004). The following factors are often considered by courts exercising their broad discretion under Section 2520(c)(2):

> (1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of DIRECTV's financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct.

*Huynh*, 318 F. Supp. 2d at 1132 (citations omitted).

On the facts of this case, the Court finds that the statutory minimum award of $1,000 in damages per access device, for the violations of § 605(a), is just.[4] Defendants purchased one or more pirating devices for use at their homes. There is no evidence that these devices were used commercially or purchased for resale. There is no claim that Defendants assisted or induced others to commit violations. Under these circumstances, the minimum statutory damages of $1,000 per device will compensate DIRECTV adequately for its loss, punish Defendants, and serve as a sufficient deterrent to others.[5] *See*

---

[4] Although DIRECTV has listed the "actual damages," the Court finds its method of calculation questionable. Specifically, DIRECTV has calculated its actual damages based on a figure of $229.08 per month, which represents the average monthly bill of a "high-end legitimate customer" (top 10% of subscribers to the Total Choice Premier package). In his affidavit, James F. Whalen, Senior Director of DIRECTV Office of Social Integrity, testifies that:

> This approach is based on the assumption that the typical user of a modified access card or other signal theft would view at least the same amount of programming as the typical high-end paying customer. In fact, since there is no DIRECTV hardware or subscription costs associated with viewing programming, it seems more likely that the user of the illegal access device would make significantly greater use of DIRECTV's proprietary programming than would the honest subscriber who pays for each channel he uses.

In other words, DIRECTV is speculating that Defendants' charges would represent the "average monthly bill" of the top 10% of all DIRECTV subscribers. DIRECTV has no other evidence to support this assertion except that this premise "seems more likely." In comparison, DIRECTV offers several subscription packages ranging in price from $36.00 per month for "Total Choice" to $90.00 for "Total Choice Premier with Local Channels."

[5] *But cf. DIRECTV, Inc. v. Montes*, 338 F. Supp. 2d 352, 356 (D. Conn. 2004) (awarding additional actual damages of $3,280 to serve as a more appropriate deterrent, where DIRECTV produced evidence that during the time defendant actually subscribed to DIRECTV the cost of his monthly subscription was approximately $80); *Getchel*, 2004 WL 1202717, at *3 (awarding additional actual damages of $3,800 to serve as a more appropriate deterrent, where DIRECTV produced evidence that

*DIRECTV, Inc. v. Kaas*, 294 F. Supp. 2d 1044, 1048 (N.D. Iowa 2003) (awarding damages of $1,000 under § 605(e)(3)(C)(i) where complaint alleged that the defendant had purchased a single pirate-access device and there was no evidence that the defendant profited from, or even used, the device); *DIRECTV, Inc. v. Hamilton*, 215 F.R.D. 460, 462 (S.D.N.Y. 2003) (awarding damages of $2,000 under § 605(e)(3)(C)(i) where one defendant had purchased two pirate-access devices and declining to award the maximum statutory damages where the plaintiff had failed to proffer any justification for such an award); *Perrier*, 2004 WL 941641, at *3 (awarding $2,000 in damages under § 605(e)(3)(C)(i) where the complaint alleged that the defendant had purchased two pirate-access devices); *Albright*, 2003 WL 22956416, at *3 (finding a statutory minimum award of $1,000 per violation sufficient to deter similar wrongdoing).

The Court in its discretion declines to award DIRECTV damages for Defendants' violations of 18 U.S.C. § 2511(1)(a).  As in *Huynh*, "[f]oremost among the court's reasons is that DIRECTV will receive a judgment against [the defendant] for his violation of § 605, a violation premised on the same underlying conduct." *Huynh*, 318 F. Supp. 2d at 1132; *cf*. *DIRECTV, Inc. v. Braun*, 2004 WL 288805, at *1 (D. Conn. Feb. 9, 2004) (awarding $10,000 in damages under

§ 2511(1)(a) where there were no damages claimed under 47 U.S.C. § 605(e)(3)(C)(i)).

### C. Attorneys' Fees and Costs

DIRECTV has also requested attorneys' fees and related litigation expenses pursuant to §§ 605(e)(3)(B)(iii) and 2520(b)(3).  The Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). DIRECTV

---

during the time Getchel actually subscribed to DIRECTV the cost of his monthly subscription was approximately $100).

has submitted Affidavits Regarding Fees and Costs as well as summaries and itemized billings. The Court finds that these costs and fees are reasonable and thus enters judgment against Defendants in the amounts specified in the attached chart plus pre- and post-judgment interest.

### D.    Injunctive Relief

Finally, the Court finds that DIRECTV is entitled to the permanent injunctive relief that it has requested in its Complaint and Motions for Entry of Judgment by Default. The Cable Communications Act permits "final injunctions on such terms as [the court] may deem reasonable to prevent or restrain violations." 47 U.S.C. § 605(e)(3)(B)(i); *see also Kaas*, 294 F. Supp. 2d at 1047. The Wiretap Act allows "equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). DIRECTV claims that unless restrained by this Court, Defendants will continue to receive and intercept DIRECTV's satellite programming, and thereby cause DIRECTV continued financial and other harm which cannot be quantified. For these reasons, the Court permanently enjoins Defendants from (1) possessing illegal access cards or other illegal devices or equipment; (2) interfering with DIRECTV's proprietary rights; (3) intercepting, receiving, divulging, or displaying DIRECTV's satellite programming without prior written consent of DIRECTV; and (4) continuing to violate the Cable Communications Act or the Wiretap Act.

## CONCLUSION

For the reasons stated above, JUDGMENT shall ENTER in favor of DIRECTV against Defendants for statutory damages and for attorneys' fees and costs in the amounts specified in the attached chart. In addition, each Defendant is hereby PERMANENTLY ENJOINED from receiving, possessing, or using any pirate-access device. A separate order shall follow.

| August 24, 2005 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |

APPENDIX

List of Defendants, Number of Violations, & Judgment Award

| **Defendant** | **Number Of Devices Purchased** | **Attorneys' Fees and Costs** | **Total Judgment Award** |
|---|---|---|---|
| Zayid Alim | 3 | $2,358.46 | $5,358.46 |
| Ha Le | 2 | $1,714.14 | $3,714.14 |

| Wayne S. Welsh | 3 | $4,617.32 | $7,617.32 |
| Felanda Reed | 3 | $3,729.34 | $6,729.34 |